# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NEREIDA MENDEZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 04 C 4159 |
| | ) |
| PERLA DENTAL, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Nereida Mendez's ("Mendez") motion for leave to amend the second amended complaint subsequent to the trial. For the reasons stated below, we deny the motion.

## BACKGROUND

Mendez alleged in her complaint that she worked for Defendant Perla Dental ("Perla"). According to Mendez, during her employment she was subjected to verbal and physical sexual advances and other sexual harassment. Mendez contended that she complained to the management of Perla, but management did not address her complaints. Mendez also asserted that Defendant Doctor Assam Ahmed ("Ahmed") and Defendant Doctor Waleed Dajani directly participated in the harassment.

1

Mendez brought the instant action and included in her second amended complaint a claim alleging gender discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and a Title VII hostile work environment claim (Count I), a Title VII retaliation claim (Count II), assault and battery claims (Count III), intentional infliction of emotional distress ("IIED") claims (Count IV), a retaliatory discharge claim (Count V), a Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, claim (Count VI), and an Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* claim (Count VII).

A jury trial began in this case on April 23, 2007, and on April 26, 2007, the jury delivered a verdict in favor of Mendez on all claims. The jury awarded Mendez compensatory damages (excluding back pay and overtime) in the amount of $20,431.25, overtime damages in the amount of $6,750, and lost wages (for the Illinois Retaliatory Discharge claim only) in the amount of $4,000, for a total non-punitive damages award of $31,181.25. The jury also awarded punitive damages of $500,000 for the Title VII harassment claim and $250,000 for the Title VII retaliation and Illinois retaliation claims. The parties subsequently filed post-trial motions and briefs concerning the statutory damages cap. On March 6, 2008, this case was reassigned to the undersigned judge. On March 26, 2008, we granted Mendez's motion for liquidated damages under the FLSA in the amount of $6,750. We also concluded that the compensatory and punitive damages granted for Title VII sexual harassment are capped at $100,000. In addition, we denied Defendants' motion to reduce the punitive damages. Finally, we denied Defendants' motion for

2

judgment as a matter of law on Mendez's intentional infliction of emotional distress claims. Mendez requests in the instant motion leave to amend the second amended complaint to conform to the evidence presented at trial.

**LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 15(b) ("Rule 15(b)"), "[w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings." Fed. R. Fed. P. 15(b). In addition, "[a] party may move--at any time, even after judgment--to amend the pleadings to conform them to the evidence and to raise an unpleaded issue." *Id.* In determining whether there was consent by the parties a court should consider "'whether the opposing party had a fair opportunity to defend and whether he could have presented additional evidence had he known sooner the substance of the amendment.'" *Farfaras v. Citizens Bank and Trust of Chicago*, 433 F.3d 558, 568 (7th Cir. 2006)(quoting *in re Prescott,* 805 F.2d 719, 725 (7th Cir. 1986))(stating in addition that "[o]ne sign of implied consent is that issues not raised by the pleadings are presented and argued without proper objection by opposing counsel").

**DISCUSSION**

Mendez requests leave to amend the second amended complaint subsequent to the trial to include Husam Aldairi ("Aldairi") as a Defendant in this case and to pierce the corporate veil in this case. Mendez contends that "after the verdict was

3

rendered, . . . Defendants have and will continue to try and evade judgment and hide assets and financial information to prevent collection in this matter." (Mot. Am. 2-3). Mendez asks this court to pierce the corporate veil of Perla and hold Aldairi personally liable.

I. Leave to be Freely Given

Mendez argues that "the standard for leave to amend is a liberal one," and that "'leave shall be freely given when justice so requires.'" (Mot. Am. 6)(quoting in part Fed. R. Civ. P. 15(a)). However, the quoted language relied upon by Mendez is from Federal Rule of Civil Procedure 15(a), which specifically relates to "[a]mendments [b]efore [t]rial." *Id.* In addition, Mendez cites in support *Stern v. U.S. Gypsum, Inc.*, 547 F.2d 1329 (7th Cir. 1977) and *Liu v. T & H Machine, Inc.*, 191 F.3d 790 (7th Cir. 1999), (Mot. Am. 6-7), which analyze a motion to amend under Rule 15(a) and did not involve motions for leave to amend a complaint after the completion of a trial under Rule 15(b). 547 F.2d at 1331-32, 34; 191 F.3d at 793-94; (Mot. Am. 6-7). Mendez also cites *Barkoo v. Melby*, 901 F.2d 613 (7th Cir. 1990) in which the Seventh Circuit held that a district court did not abuse its discretion in allowing a complaint to be amended at the close of the plaintiff's evidence. *Id.* at 617. However, unlike the instant action, the plaintiff in *Barkoo* brought up the new claims during the trial. *Id.* The Seventh Circuit found that the defendant consented to trial of the new claim by not formally objecting at that juncture. *Id.* In the instant action, Mendez merely points to isolated evidence that touches on the factors for a piercing

of the corporate veil theory. Mendez also attempts to speculate as to the purpose behind certain cross-examination by Defendants at trial. Mendez has not pointed to sufficient evidence that shows that Defendants were alerted as to Mendez's new claims or that Defendants should have lodged objections with this court before or during the trial. The new issues that Mendez seeks to interpose into this case involving the personal liability of Aldairi are much broader issues than the isolated references at trial to use of corporate funds.
It would be unjust to allow Mendez to spring such claims on the Defendants at this juncture.

Federal Rule of Civil Procedure 15 recognizes that a request to amend a complaint during or after a trial should not be treated the same as a request to amend that was made before a trial. Rule 15(b) specifically provides guidelines for "[a]mendments [d]uring and [a]fter [t]rial." Fed. R. Civ. P. 15(b). Mendez does not face the same burden for amending her complaint four years after the initiation of this action and after a trial, as initially she faced on the early stages of this action. Thus, Mendez incorrectly concludes that leave to amend must freely be given at this juncture of these proceedings.

II. Consent to Trial of Issue

In the instant action, Mendez is seeking to amend her complaint after trial and is seeking to do so under Rule 15(b)(2). (Mot. Am. 2). As indicated above, an amendment under Rule 15(b)(2) can be granted only "[w]hen an issue not raised by

5

the pleadings is tried by the parties' express or implied *consent*. . . ." Fed. R. Civ. P. 15(b)(2)(emphasis added). Mendez's motion and reply brief provide extensive arguments as to why Mendez should prevail under the piercing the corporate veil theory. However, Mendez fails to show that the consent requirement is satisfied in this case. Regardless of the merits of Mendez's piercing the corporate veil theory, she must still provide a basis to amend the second amended complaint at this late stage of these proceedings that for all practical purposes have been concluded. Mendez fails to point to evidence of express consent by the parties to try the issues concerning the personal liability of Aldairi and piercing the corporate veil. Mendez merely points to isolated references to questioning of Aldairi concerning matters such as the commingling of corporate funds. However, Mendez does not point to sufficient evidence to show that the parties impliedly consented to have the new claims tried. As Mendez recognizes in her motion, "the purpose of the [c]omplaint is merely to put defendants on notice of the claims brought against them. . . ." (Mot. Am. 8). Mendez had the opportunity to clarify her intentions to pursue the new claims before and during trial and did not do so. Defendants were not put on notice of the new claims proposed by Mendez. Defendants correctly point out that there could be additional evidence and arguments that would be placed at issue at trial for the new claims proposed by Mendez. It is pure speculation on Mendez's part that Aldairi would not have conducted the trial any differently if he had been a Defendant and potentially faced personal liability. Thus, Mendez has failed to show that there was express or implied consent and Mendez is precluded from amending the

complaint under Rule 15(b)(2).

III. Prejudice, Bad Faith, and Delay

Even if Mendez had shown that there was an implied consent by Defendants to try the new claims proposed by Mendez and Mendez could potentially amend the complaint under Rule 15(b)(2), Mendez has not provided sufficient justification to allow such an amendment. *See Sound of Music Co. v. Minnesota Min. & Mfg. Co.*, 477 F.3d 910, 922 (7th Cir. 2007)(stating that for an amendment under Rule 15(a) "a district court may deny a plaintiff leave to amend if 'there is undue delay, bad faith[,] or dilatory motive . . . [, or] undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment'")(quoting in part *Park v. City of Chicago*, 297 F.3d 606, 612 (7th Cir. 2002)). Mendez has failed to provide an adequate explanation for seeking to include Aldairi as a Defendant after such an extensive delay. Mendez filed her first complaint in June 2004, almost four years ago. Mendez then amended the complaint twice before trial, amending her complaint a second time on March 11, 2005. The trial in this case began on April 23, 2007 and ended on April 26, 2007. Mendez did not file the instant motion for leave to amend until November 7, 2007. Mendez has failed to sufficiently explain why she could not have included Aldairi as a Defendant in one of her initial three complaints. Nor does she explain why she could not have made the necessary amendments before the trial, which was over two years after she filed her second amended complaint. The record does not indicate that Mendez had a good faith basis to wait for the extended period

7

before seeking to introduce her new claims. We also note that Mendez acknowledges in her instant motion that the main reason why she now desires to amend the complaint again is that she has been unsuccessful in her efforts to collect the monies owed to her under the judgment in this case. (Mot. Am. 2-3). This admission on her part, that in light of her unsuccessful collection efforts, she now is seeking to amend the complaint in order to pursue an alternative course for collection contradicts her contentions that before the trial the parties implicitly understood that they were trying the issues she now seeks to include in her complaint.

Defendants also correctly point out that Aldairi would be severely prejudiced if Mendez were allowed to amend her complaint again at this juncture. For example, Aldairi would be entitled to present his own defense to specifically address the necessary elements for defending against an attempt by a plaintiff to pierce the corporate veil. The fact that Aldairi participated in this case as a corporate representative is not sufficient to show that he had an opportunity to present a defense for himself in a personal capacity for an unpled claim that Mendez made no mention of until this juncture. Aldairi would need to return his attention to addressing the legal issues in this case that he reasonably believed had been concluded at the district court level when there was a verdict in this case. Rule 15(b)(2) provides a mechanism for amending a complaint in limited circumstances, where there was a certain consent by the parties. Rule 15(b)(2) does not provide that it can be used by which a plaintiff can pursue collection efforts to enforce a judgment. The trial has been concluded in this matter and this case is at an end.

Mendez has had every opportunity to amend her complaint and sue Aldairi in his personal capacity ever since she first brought this action over four years ago. To allow her to amend her complaint as an afterthought after a trial in this case in order to facilitate her collection efforts would be directly contrary to the public interest in having finality in litigation. *See Bell v. Eastman Kodak Co.*, 214 F.3d 798, 800-801 (7th Cir. 2000)(referring to "the social interest in expedition and finality in litigation"); *see also Amendola v. Bayer*, 907 F.2d 760, 765 n.4 (7th Cir. 1990)(indicating that even under the liberal amendment standard for Rule 15(a) amendments, the rule should not be allowed to negate the public policy in favor of finality in litigation); *Passarella v. Hilton Intern. Co.*, 810 F.2d 674, 679 (7th Cir. 1987)(referring to "the need for finality of litigation"). Mendez has not provided sufficient justification to amend her complaint at this late juncture and to potentially reopen this case for an additional trial. Therefore, we deny the motion for leave to amend the second amended complaint.

## CONCLUSION

Based on the foregoing analysis, we deny the motion for leave to amend the second amended complaint.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: April 25, 2008